[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12380
Non-Argument Calendar
_____

D.C. Docket No. 8:16-cr-00145-SDM-AAS-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

DARIUS VASHON TOLBERT,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 1, 2018)

Before MARCUS, ROSENBAUM and BLACK, Circuit Judges.

PER CURIAM:

Darius Tolbert, a federal prisoner, appeals the two, concurrent 52-month sentences imposed following his convictions for theft of government property in violation of 18 U.S.C. § 641 and theft or receipt of stolen mail matter in violation of 18 U.S.C. § 1708.  Tolbert contends the district court clearly erred by finding he was responsible for an actual or intended loss of more than $550,000, which triggered a fourteen point enhancement to Tolbert's base level under U.S.S.G. § 2B1.1(b)(1)(H).  After review, we affirm.[1]

For offenses involving fraud and deceit, the Guidelines provide the defendant's offense level increases in relation to the amount of money at issue. *See* U.S.S.G. § 2B1.1(b).  If the loss attributable to the defendant is more than $550,000, but less than $1,500,000, the defendant is subject to a fourteen point increase in his offense level.  U.S.S.G. § 2B1.1(b)(1)(H).

When calculating the amount of the loss, the district court looks to the greater of the actual loss or intended loss.  U.S.S.G. § 2B1.1, comment. (n.3(A)).  The Guidelines define actual loss as "the reasonably foreseeable pecuniary harm that resulted from the offense."  *Id.* § 2B1.1, comment. (n.3(A)(i)).  Intended loss is "the pecuniary harm that the defendant purposely sought to inflict," including

---

[1] "We review a district court's interpretation of the Sentencing Guidelines de novo, and the determination of the amount of loss involved in the offense for clear error." *United States v. Maxwell*, 579 F.3d 1282, 1305 (11th Cir. 2009).  Clear error will be found only if we are left with a definite and firm conviction that the district court committed a mistake.  *Id.*

2

"harm that would have been impossible or unlikely to occur." *Id.* § 2B1.1, comment. (n.3(A)(ii)).

Tolbert asserts the district court improperly relied on speculation to determine the loss amount, given the lack of proof that he cashed any Social Security benefits check besides the nine checks bearing his fingerprints—which totaled approximately $10,000.  When a defendant challenges one of the factual bases of his sentence, the Government has the burden of establishing the disputed fact by a preponderance of the evidence.  *See United States v. Sepulveda*, 115 F.3d 882, 890 (11th Cir. 1997).

Although the Government must support its loss calculation with specific, reliable evidence, the Guidelines do not require the district court to calculate the amount of the loss with utmost precision.  *See United States v. Campbell*, 765 F.3d 1291, 1301–04 (11th Cir. 2014).  The district court need only make a reasonable estimate of the loss based on the available information.  U.S.S.G. § 2B1.1, comment. (n.3(C)).  Because the district court is in a unique position to assess the evidence and estimate the loss, its loss determination is entitled to appropriate deference.  *United States v. Wilson*, 884 F.2d 1355, 1356 (11th Cir. 1989).

The district court did not clearly err in determining Tolbert was responsible for a loss amount of more than $550,000.  The sentencing court's factual findings may be based upon "evidence heard during trial, facts admitted by a defendant's

3

plea of guilty, undisputed statements in the presentence report, or evidence presented at the sentencing hearing." *Wilson*, 884 F.2d at 1356. Here, reliable and specific evidence adduced at trial proved by a preponderance of the evidence that Tolbert was responsible for the $569,876.40 in stolen checks cashed at JMC JYOT LLC (JMC), a convenience store in Live Oak, Florida.

Four distinct batches of checks, corresponding with four check dates, were cashed at JMC. Tolbert's fingerprints were found on nine checks bearing three different check dates: May 23, June 27, and July 3. The May 23 checks were all cashed before the July 3 checks had been printed, and all the June 27 checks were cashed several days before any of the July 3 checks. Thus, the evidence showed Tolbert handled multiple batches of checks cashed at JMC, and could not have handled all nine checks at once.

This was consistent with Richard Anderson's testimony that Tolbert bought checks from him on one initial occasion, followed by four to five subsequent occasions. Anderson testified to selling Tolbert approximately $510,000 to $620,000 in checks: $10,000 to $20,000 on the first occasion and $100,000 on four or five subsequent transactions—except that $200,000 in checks were sold on the last occasion. The amounts cashed at JMC were largely consistent with the amounts Anderson testified to selling Tolbert. Approximately $60,000 worth of checks from the April 18 batch were cashed at JMC, approximately $100,000 from

4

the May 23 batch, and, on the last two occasions, batches of approximately $200,000 were cashed at JMC.  Finally, the dates the checks were cashed at JMC corresponded with Anderson's testimony about when he sold checks to Tolbert. Anderson testified he sold checks to Tolbert between March and July 4, 2012, and the checks were cashed at JMC between April 24 and July 13, 2012.

Based on the totality of this specific, reliable evidence—that Tolbert handled multiple batches cashed at JMC, the relationship between the value of the checks Anderson sold Tolbert and the value of the checks cashed at JMC, and the relationship between the dates Anderson sold checks to Tolbert and the dates the checks were cashed at JMC—the district court did not clearly err in determining it was more likely than not Tolbert was responsible for the checks cashed at JMC. Consequently, the district court did not err in enhancing Tolbert's offense level by fourteen points.  We affirm.

**AFFIRMED.**